**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN = 9 2025

JEFFREY P. COLWELL
CLERK

Civil Action No. _____
(To be supplied by the court)

Robert M. Elliott _____, Plaintiff

v.

United States _____,

Jury Trial requested:
(please check one)
____ Yes __✓__ No

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

**PRISONER COMPLAINT**

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Robert M. Elliott #16749-028, U.S. Penitentiary ADMAX,
P.O. Box 8500, Florence, Co. 81226

(Name, prisoner identification number, and complete mailing address)

(NO OTHER NAMES)

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
____ Convicted and sentenced state prisoner
✓ Convicted and sentenced federal prisoner
____ Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:    United States

(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  ✓ Yes ____ No (*check one*).  Briefly explain:

Under color of federal law under circumstances where the United States, if a private person, would be liable in accordance with the law of Colorado

Defendant 1 is being sued in his/her ____ individual and/or ✓ official capacity.

2

Defendant 2: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___    State/Local Official (42 U.S.C. § 1983)

___    Federal Official
As to the federal official, are you seeking:
___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

√    Other: (*please identify*) FTCA, 28 U.S.C. § 1346 (b)(1)

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Battery

Claim one is asserted against these Defendant(s): United States

Supporting facts: (1) On 9-26-2024, the Plaintiff went on a hunger strike.

(2) On 10-2-2024, Lieutenant Domenguez and correctional officer Akens came to the Plaintiff's cell and ordered the Plaintiff to submit to handcuffs for medical treatment.

(3) At which point, the Plaintiff told Lt. Domenguez, that he had a liberty interest in avoiding unwanted medical treatment, and that his liberty interest was protected by the Due Process clause of the Fifth Amendment.

(4) To which Lt. Domenguez replied "cuff up" and the Plaintiff complied with the direct order to submit to handcuffs, then the Plaintiff was escorted to a holding cell. (CONTINUE ON ATTACHED ADDITIONAL PAGES)

4

## D. STATEMENT OF CLAIMS

(5) After being in the holding cell for 30-minutes, Lt. Domenguez ▮▮▮, C.O. Akens, and several other correctional officers escorted the handcuffed Plaintiff to an exam room on B-Range in H-Unit at ADX.

(6) Upon arriving at the exam room, a scale was on the floor outside of the exam room.

(7) Lt. Domenguez and Nurse Jones told the Plaintiff to step onto the scale.

(8) In reply, the Plaintiff reiterated his protected due process right to avoid unwanted medical treatment, which upset Lt. Domenguez, so Lt. Domenguez, along with three other correctional officers, forcefully grabbed the Plaintiff, aggresively lifted him off the ground, and placed him on the scale.

(9) The Plaintiff did not resist being roughed up like a rag doll, and as the Plaintiff was placed onto the scale, Lt. Domenguez grabbed the Plaintiff's shoulder with one hand, while simultaneously grabbing the back of the Plaintiff's neck with his other hand, then Lt. Domenguez slammed the Plaintiff's face into the brick wall in front of the scale.

(1 of 16)

## D. STATEMENT OF CLAIMS

(10) The Plaintiff was subdued in handcuffs, and presented no realistic threat to security or safety of staff, but Lt. Domenguez slammed the Plaintiff's face to the wall with the intent to harm the Plaintiff for not stepping onto the scale.

(11) The slamming of the Plaintiff's face to the wall, caused the Plaintiff to immediately lose his vision, followed by a 30-second loss of balance, wherein the Plaintiff could not stand on his own two feet, but had to be held up by several correctional officers, and a big knot immediately popped up on the Plaintiff's forehead, which caused wanton pain for a few days, and the vision in the Plaintiff's left eye still has not fully recovered to this day.

(12) The harmful physical contact that was initiated by Lt. Domenguez, was not reasonably related to a legitimate penological objective, because 28 C.F.R. § 552.22(b) expressly prohibited Lt. Domenguez from using force to punish the Plaintiff for not stepping onto the scale.

(13) That means that Lt. Domenguez was not acting within the scope of his employment, by battering the Plaintiff, but he was acting under the color of law, and his entire relationship with the Plaintiff, was as a Lieutenant.

(2 of 16)

## D. STATEMENT OF CLAIMS

(14) Congress intended the proviso in 28 U.S.C. §2680(h) to apply to acts of law enforcement officers "under the color of Federal law," S. Rep. No. 93-588 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2791.

(15) This reading of the proviso is fully consistent with 28 U.S.C. §2674, which renders the government liable "in the same manner and to the same extent as a private individual under like circumstances."

(16) The FTCA jurisdictional provision, 28 U.S.C. §1346(b)(1), explicitly refers to scope of employment, but that reference is immediately followed by the "private individual" rule that matches the substantive standard set forth in §2674.

(17) Thus, §1346(b)(1) provides federal jurisdiction of the Plaintiff's civil action on his claim against the United States for injury caused by the wrongful act of any employee of the Government, while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of Colorado.

(3 of 16)

## D. STATEMENT OF CLAIMS

(18) 28 U.S.C. § 2680 (h) waived immunity for battery by law enforcement officers, and tort claims for battery in Colorado, do not afford federal employees reasonable force protection, also C.R.S. § 17-20-122 and 18-1-703 (1)(b) does not apply to federal employees sued under the FTCA.

(19) The elements of ~~xxxx~~ liability for battery in Colorado, are (1) The defendant's act resulted in physical contact with the plaintiff; and (2) The defendant intended to make harmful or offensive physical contact with the Plaintiff, and (3) The contact was harmful or offensive.

(20) Lt. Domenguez's actions satisfied all three of the above elements.

(21) After Nurse Jones weighed the Plaintiff, the Plaintiff was carried into the exam room, and held down onto a bed, while his blood was drawn by Nurse Jones.

(22) Afterwhich, the Plaintiff was escorted back to his cell, without receiving any medical treatment for the knot on his forehead, although he verbally requested it.

(23) The Plaintiff was in wanton pain, but nurse Jones refused to document the injury to the Plaintiff's forehead, and medical staff waited a month before they finally did a medical assessment on the Plaintiff's forehead, by which time the knot had gone down.

(4 of 16)

## D. STATEMENT OF CLAIMS

(24) The concussion was intentionally not documented and not treated by medical staff in an effort to conceal the incident to make it look like it never happened, but the Plaintiff filed Administrative Remedies about the battery incident, as well as the cover-up.

(25) Administrative Remedy Numbers 1216145-A1, and 1217029-A1, and the responses to the above grievances, is evidence regarding the battery incident, and the cover-up.

(26) Also, the Plaintiff filed a Standard Form 95.

(27) Several prisoners housed on B-Range in H-Unit, witnessed the battery, but the Plaintiff could not obtain affidavits from them, because he was not allowed access to them.

(28) Along with the aforementioned injuries that the Plaintiff suffered because of the battery, the Plaintiff also suffered mental pain, emotional stress, fear, anxiety, embarassment, humiliation, impairment of the quality of life, and depression.

(5 of 16)

## D. STATEMENT OF CLAIMS

CLAIM TWO: Assault

Claim two is asserted against these Defendant(s): United States

Supporting Facts: (1) On 9-28-2023, the Plaintiff arrived at ADX.

(2) While in R&D, J. Francia, S.I.S. Technician, and Keller, S.I.S. Technician, ordered the Plaintiff to strip for a strip search, and the Plaintiff complied.

(3) After the strip search was over, the Plaintiff asked for cloths, but J. Francia told the Plaintiff that he needed to take some naked pictures of the Plaintiff, and the Plaintiff objected to no avail.

(4) Over the Plaintiff's objections, J. Francia grabbed a digital camera, and began taking naked pictures of the Plaintiff.

(5) J. Francia ordered the Plaintiff to pose in several provacative poses, so that he could take pictures of the Plaintiff's buttox and penis, and the Plaintiff covered his penis with his hands.

(6) Both J. Francia and Keller ordered the Plaintiff to remove his hand from the front of his penis, and the Plaintiff refused.

(6 of 16)

## D. STATEMENT OF CLAIMS

(7) At which point, both J. Francia and Keller stepped forward aggresively, and told the Plaintiff that "its going to happen one way or the other, so you can do this the easy way, or the hard way."

(8) Out of fear that he was about to catch a beat down, the Plaintiff moved his hands out of the way.

(9) As soon as the Plaintiff removed his hands from his penis, both J. Francia and Keller smiled, then J. Francia began taking pictures of the Plaintiff's penis and buttox, while simultaneously ordering the Plaintiff to pose in erotic postures that made the Plaintiff feel degraded.

(10) The Plaintiff felt powerless, due to their position of authority over the Plaintiff, which ▇▇▇ left the Plaintiff ▇▇ ▇ ▇ no choice but to ▇▇▇ let them take pictures of his penis and buttox, or catch a beat down.

(11) At which point, it was clear that J. Francia and Keller intended to place the Plaintiff in apprehension of offensive physical contact, and they knew that their conduct would probably place the Plaintiff in apprehension of immediate physical contact.

(7 of 16)

## D. Statement of Claims

(12) While J. Francia took the naked pictures of the Plaintiff, Keller made catcalls and ~~whistled~~ whistled at the Plaintiff, which made the apprehesion of physical contact appear offensive, when the Plaintiff realized that he was being used for sexual gratification purposes.

(13) P.S. 5324.06, defines sexual misconduct as "The use of indecent sexually oriented visual surveillance for the purpose of sexual gratification."

(14) In total disregard of Program Statement 5324.06, J. Francia uploaded the naked pictures of the Plaintiff into the computers S.I.S. data base, as well as the Sentry, right in front of the Plaintiff.

(15) Eventually, S.I.S. Lieutenant Gonzalez saw the naked pictures of the Plaintiff in the S.I.S. database, and he told J. Francia to delete them, according to J. Francia, when the Plaintiff later asked him about the pictures.

(16) Even if the naked pictures of the Plaintiff were deleted, the pictures are still in the computers harddrive, as well as the server, which is evidence, that the Plaintiff can obtain via a request for production of documents, during discovery, which will prove the existence of the naked pictures of the Plaintiff.

(8 of 16)

## D. STATEMENT OF CLAIMS

(17) Also, during a verbal exchange of words between J. Francia and the Plaintiff, three prisoner witnesses, by the names of Dzhokhar Tsarnaev, Joseph Romano, and Mohammed Jabarah, heard J. Francia tell the Plaintiff that he took pictures of the Plaintiff's penis, and all three of the witnesses will be willing to testify at an evidentiary hearing, or via a writ of habeas corpus ad testificandum.

(18) The Plaintiff does not have access to the three witnesses, because they are housed in H-Unit at ADX, and the Plaintiff was abruptly moved out of H-Unit, before he could obtain declarations from them.

(19) For the record, there are two kellers that work at ADX, one is an S.I.S. Lieutenant, and the other is an S.I.S. technician.

(20) The latter was involved in the assault.

(21) The assault caused the Plaintiff to suffer the following non-economic injuries: mental pain and suffering, ~~inconvenience~~, emotional stress, fear, anxiety, embarrassment, humiliation, and impairment of the quality of life, also the deprivations of the rights created by 42 U.S.C. § 15601, constituted an injury.

(9 of 16)

## D. STATEMENT OF CLAIMS

CLAIM THREE: Negligence

Claim three is asserted against these defendant(s):
United States

Supporting Facts: (1) On 12-19-2023, the Plaintiff reported being sexually assaulted on 9-28-2023, by way of PREA, and the Plaintiff complained that the sexual assault caused him to suffer from an unsound mind, including traumatic flashbacks of being molested as a child.

(2) 18 U.S.C. § 4241 required the board of examiners to examine the Plaintiff's allegations of an unsound mind, and report their findings and the facts on which they were based, to the Attorney General, which was not done.

(2) Also, Public Law 108-79 and the provisions of 28 C.F.R. § 115, imposed a non-discretionary duty on the Bureau of Prisons (BOP) to ensure that the Plaintiff was allowed to speak to an outside Sexual Abuse Victims Advocate, if he wanted to.

(3) All Psychology staff at ADX-try to cover up, and downplay all PREA reports that are made against BOP staff, so the Plaintiff definitely wanted to speak to an outside Sexual Abuse Victims Advocate.

(10 of 16)

## D. STATEMENT OF CLAIMS

(4) Upon reporting the sexual assault, the Plaintiff was asked by BOP staff, if he would like to speak to an outside Sexual Abuse Victims advocate, and the Plaintiff said yes.

(5) A few days later, the Plaintiff started asking several BOP staff members, when was he going to be able to speak to the Sexual Abuse Victims Advocate.

(6) The Plaintiff's Counselor, Unit Manager Lazariuk, Warden Ciolli, Assistant Health Service Administrator Salcedo, Medical Provider Maltezo, Psychologist Mann, Psychologist Jay, and others told the Plaintiff that he would not be permitted to speak to the outside Sexual Abuse Victims Advocate, until his SAMS was modified to allow him to do so.

(7) On 2-26-2024, the Plaintiff's SAMS was modified to allow him to speak to an outside Sexual Abuse Victims Advocate, and he immediately began requesting to do so.

(8) At which point, the PREA Coordinator told the Plaintiff that ADX no longer has an outside Sexual Abuse Victims Advocate.

(11 of 16)

## D. STATEMENT OF CLAIMS

(9) As to date, the Plaintiff still has not been allowed to speak to an outside Sexual Abuse Victims Advocate, and thus, the BOP has breached Public Law 108-79 and 28 C.F.R. § 115.15 mandatory duty to allow the Plaintiff to speak to an outside Sexual Abuse Victims Advocate.

(10) 28 C.F.R. § 115.67 (b) states in part that "The agency shall employ multiple protection measures, such as removal of alleged staff from contact with victim.

(11) 28 C.F.R. § 115.67 (b), imposed a non-discretionary duty on the BOP to remove J. Francia from haveing contact with the Plaintiff, when the Plaintiff reported the sexual assault on 12-19-2023.

(12) But the BOP breached 28 C.F.R. § 115.67 (b)'s non-discretionary duty, by having J. Francia working in the Plaintiff's housing unit from December of 2023 until June of 2024, feeding the Plaintiff his food trays, and taking the Plaintiff to outside recreation, by grabbing the Plaintiff's arm.

(13) The close contact with J. Francia forced the Plaintiff to be retraumatized everyday that J. Francia touched his arm, and the Plaintiff had to constantly look into the face of the person who forced him to take naked pictures.

(12 of 16)

## D. STATEMENT OF CLAIMS

(14) The negligent acts of BOP staff caused the Plaintiff to suffer non-economic injuries in the form of anxiety, an unsound mind, fear, humiliation, emotional distress, ~~insomnia~~ suicide attempts, suicidal thoughts, thoughts of self harm, embarrassment, loss in the ~~quality~~ quality of life, and indignity.

(13 of 16)

## D. STATEMENT OF CLAIMS

Claim Four: Negligence

Claim four is asserted against these Defendant(s): United States

Supporting Facts: (1) The Plaintiff reiterates facts 1-27 from Claim one, and adds the following facts.

(2) Seang Maltezo is employed by the Bureau of Prisons, as a health care provider, and her salary is paid by the Department of Justice.

(3) Under 18 U.S.C. § 4048(a)(2) & (3)(A)(B), the Director of the Bureau of Prisons (BOP) has authority of the principal control of the operations of the health care provider, and Section 4048(a)(2) & (3)(A)-(B) clarifies that principal control of the operations of the health care provider is authorized by the Director of the BOP to provide health care Services, and operating within the scope of such authorization.

(4) P.S. 6031.04's purpose and scope, is for the health care provider to effectively deliver medically necessary health care to inmates according to the individualized needs of each inmate, while operating within the scope of the BOP Director's authorization under 18 U.S.C. § 4048(a)(2) & (3)(A)-(B).

(14 of 16)

## D. STATEMENT OF CLAIMS

(5) 18 U.S.C. § 4042 (a)(2) imposed a non-discretionary duty on the BOP to provide care to the Plaintiff according to the individualized need of treatment for the knot on his forehead and concussion protocal.

(6) The BOP breached 18 U.S.C. § 4042 (a)(2)'s duty by waiting 28 days to provide care for the knot on the Plaintiff's forehead, at a time when the knot had gone down, although the Plaintiff made several request for care of the knot on his forehead, as well as the vision problems, that were caused by the concussion.

(7) The word "shall", as used in the text of 18 U.S.C. § 4042 (a)(2), which requires § 4042(a)(2)'s provide for the care requirement, is a nondiscretionary function of the BOP, because Congress did not use the word may in the text of Section 4042 (a)(2).

(8) Clearly, the Plaintiff's health care provider, Seana Maltezo, did not effectively deliver medically necessary health care to the Plaintiff, by waiting 28 days to assess the knot on the Plaintiff's forehead, which placed the Plaintiff at risk of going into a coma, or brain damage.

## D. STATEMENT OF CLAIMS

(9) The Plaintiff's vision in his left eye still has not returned to normal, due to the delay in receiving medical care, and the delay has also caused the Plaintiff to experience blackouts at least once a week, which could have been prevented, if the Plaintiff would have been provided health care sooner.

(10) Instead, Maltezo, operating within the scope of the BOP director's authorization, delayed providing care to avoid documenting the knot on the Plaintiff's forehead, which has resulted in permanent blurry vision in the Plaintiff's left eye.

(11) The Plaintiff has also suffered anxiety, loss in the quality of life, and emotional distress, as a result of the negligent acts of BOP employees.

(12) The text of 28 U.S.C. § 1915A(b)(1), can be read in pari materia with the text of Fed. R. Civ. P. 12(b)(6), therefore, the doctrine of issue preclusion precludes a redundant Rule 12(b)(6) defense from being raised, once the Court screens the Plaintiff's complaint under 28 U.S.C. § 1915A(b)(1), and makes a merits determination that no portion of the complaint should be dismissed for failure to state a claim upon which relief may be granted.

(13) There's no need for the Court to make the same determination twice.

(16 of 16)

## E.     PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _✓_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):  Merrick Garlan, et. al.

Docket number and court:  24-cv-02108-NYW ; U.S.D.C, -Colorado

Claims raised:  Constitutional claims

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)  Pending

Reasons for dismissal, if dismissed:  N/A

Result on appeal, if appealed:  N/A

## F.     ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

✓ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

✓ Yes ___ No (*check one*)

5

## G.     REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."* The Plaintiff requests a bench trial, also the Plaintiff requests to be awarded the following amount as ~~punitive as~~ compensatory damages : $25,000 for Claim One, $150,000 for Claim Two, $150,000 for Claim Three, and $25,000 for Claim Four.

## H.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Robert M. Elliott*

(Plaintiff's signature)

6-2-2025

(Date)

(Revised November 2022)

6